Gerald Grunsfeld, Esq.
Lazar, Grunsfeld Elnadav, LLP
1795 Coney Island Avenue
Brooklyn, NY 11230
Telephone: (718) 947-7476
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIFEGUARD LICENSING CORP.<br><br>Plaintiff,<br><br>-against-<br><br>RONY SHAUL, and J & C BEACHWEAR, INC.<br><br>Defendants, | **COMPLAINT**<br>**Trial by Jury**<br>**Demanded** |

Plaintiff, LIFEGUARD LICENSING CORP. ("Lifeguard Corp.,"), by its attorneys, as and for its Complaint against Defendants, allege as follows:

## NATURE OF THE ACTION

1. In this action, Plaintiff seeks damages based upon Defendants' counterfeiting and infringement of Lifeguard Corp.'s federally registered LIFEGUARD® and LIFE GUARD® trademarks (the "Marks") and based upon Defendants' acts of unfair competition. Defendants are using counterfeiting and infringing reproductions of the Marks on the same merchandise that Plaintiff uses the Marks and are competing with Plaintiff in the same channels of trade.

## THE PARTIES

2. Plaintiff Lifeguard Corp., is a corporation organized under the laws of the State of Delaware and maintains its principal place of business at 595 Madison Avenue, New York, NY 10022.

3. Upon information and belief, Defendant RONY SHAUL is the owner of a beachwear company called J & C BEACHWEAR, INC.

4. Upon information and belief, Defendant RONY SHAUL resides in South Carolina.

5. Defendant J & C BEACHWEAR, INC. is a South Carolina company specializing in the sale of beach-ware and summer-ware.

6. Upon information and belief, Defendant RONY SHAUL makes all decisions of significance for J & C BEACHWEAR, INC.

7. Defendants sell their apparel and other products from a store in South Carolina and from a virtual store on Ebay.com ("EBAY").

8. Upon information and belief, as of November 19, 2015, Defendants were listing several thousand items for sale via a fully interactive virtual store on EBAY.

9. Upon information and belief, as of November 19, 2015, this included large quantities of "Lifeguard" baseball caps, sweatshirts/hoodies, and towels.

10. Defendants target New York customers through their virtual EBAY store.

11. Upon information and belief, Defendants sell large quantities of apparel and apparel accessories to New York customers through their virtual EBAY store.

12. Upon information and belief, Defendants ship large quantities of apparel and apparel accessories to New York customers.

13. Upon information and belief, Defendants actively solicit and derive substantial revenues from customers located in the State of New York.

14. Defendants have also sold the complained of infringing/counterfeiting products to customers in New York, and delivered them to addresses in New York, via their virtual EBAY store.

15. As such, this Court has personal jurisdiction over Defendants.

16. Defendants advertise their Lifeguard products on EBAY.com as legitimate licensed official Lifeguard product.

17. Defendants show a picture of the official Lifeguard hangtag on their Lifeguard products listings on EBAY.com to give the impression to customers they sell and ship legitimate licensed official Lifeguard product.

18. In reality, Defendants sell and ship unlicensed counterfeit Lifeguard products to their customers.

19. Said infringing and counterfeiting activity by Defendants has allowed them to accrue an unknown amount of unlawful profits while simultaneously depriving Plaintiff of same.

20. Plaintiff has a good faith basis to believe that Defendants profits from Defendants' counterfeiting and infringing of the Lifeguard apparel totals many thousands of dollars per year.

## JURISDICTION AND VENUE

21. The action arises under the Lanham Trademark Act, 15 U.S.C. §1051 et seq. ("the Lanham Act"), and the common law of the State of New York. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

22. This Court has jurisdiction over Defendants because of the revenues they have solicited and obtained from New York customers, because of the counterfeit/infringing apparel they have shipped to New York, as outlined above in paragraphs 8-16.

23. Venue is proper in this District pursuant to 28 U.S.C. §1391.

## FACTS COMMON TO ALL CLAIMS

**Background on Lifeguard and the Lifeguard Mark**

24. Lifeguard Corp., directly and through its predecessors in interest, has been using the Marks on swimwear and underwear since 1937. Since that time, Lifeguard Corp., has expanded its use of the Marks to other apparel items including but not limited to shirts, sweatshirts, t-shirts and beachwear. As a result of Lifeguard Corp.'s long-standing use of the Marks as well as Lifeguard Corp.'s success in selling, advertising, licensing and promoting

clothing and accessories bearing the Marks, the LIFEGUARD® brand and marks have become strong and recognizable.

25. Lifeguard Corp., is the owner of the trademarks LIFE GUARD® (Reg. No. 355,543) for swim trunks, LIFEGUARD (Stylized)® (Reg. No. 562,509) for men's underwear, LIFEGUARD® (Reg. No. 2,754,820) for a variety of goods in classes 18 (bags) and 25 ( clothing and accessories) and LIFEGUARD® ( Reg. No. 3,800,325) for a variety of goods in class 25 (clothing and accessories). United States Patent and Trademark Office ("USPTO") printouts illustrating Lifeguard's ownership of the Marks are attached hereto as **Exhibit A**.

26. Lifeguard Corp., licenses use of the Marks to prominent companies such as The Warnaco Group, Inc. ("Warnaco") and Popularity Products LLC ("Popularity").

27. Until recently, under license from Lifeguard Corp., Warnaco's subsidiary, Speedo, used the Lifeguard mark on hundreds of thousands of items of Speedo apparel.

28. More recently, Popularity Products, LLC, ("Popularity") has the exclusive license to the Marks in the United States within various apparel categories, including t-shirts, sweatshirts, and tank tops.

29. Pursuant to this exclusive licensee, Popularity sells hundreds of thousands of pieces of Lifeguard apparel every year.

30. Plaintiff and Popularity have made prominent and extensive use of the Marks in commerce on apparel including on items such as bathing suits, underwear, pants, sweatshirts, t-shirts and hats.

31. Popularity has been using the Marks on the front of the garments and on hangtags and labels immediately affixed to such garments.

32. Popularity took out a full page add in Souvenirs & Gifts & Novelties Magazine detailing Lifeguard's trademark rights and warning any infringers that Lifeguard will "take all necessary action to protect its rights…." This advertisement ran in the November/ December 2008 and January/ February 2009 issues.

33. The hangtags and labels affixed to Lifeguard's merchandise also detail Plaintiff' trademark rights and further warn any infringers that Plaintiff will take all necessary action to protect their rights.

34. Plaintiff has also, via counsel consistently sent cease and desist letters to any persons/entities it has become aware of who have used the Marks without authorization.

35. Plaintiff has also filed several lawsuits seeking damages for trademark counterfeiting/infringement against several entities that used their Marks without authorization.

**Defendants' Infringing Use of the Marks**

36. Defendants have knowingly, willfully and without any authorization from Plaintiff, marketed and sold clothing bearing infringing reproductions of the Marks in interstate and intrastate commerce, including, sales to customers in New York.

37. Defendants are advertising and selling their Infringing Merchandise, which is often identical in appearance, to merchandise sold by Plaintiff, using the exact same Mark as that owned and federally registered by Lifeguard. Thus, consumers are likely to be misled into believing that the Counterfeiting/Infringing Merchandise is genuine Lifeguard merchandise when in fact it is not.

38. Upon information and belief, the Infringing Merchandise sold by Defendants that bears virtually identical replicas of the Marks is calculated to deceive the purchasing public into believing that the Infringing Merchandise is manufactured, sold, authorized by and/or affiliated with the Lifeguard mark and/or with Lifeguard Corp.

39. Defendants' sales of the Infringing Merchandise have substantially undermined Lifeguard Corp.'s lucrative license agreements with Popularity, as well as the LIFEGUARD® brand in general.

40. Defendants' actions have caused and will continue to cause Plaintiff significant financial losses while simultaneously unjustly enriching them by the false association created by their use of the Marks.

## FIRST CLAIM FOR RELIEF

*(Trademark Infringement Under 15 U.S.C. §§1114)*

41. Plaintiff repeats and re-alleges the allegations in the prior Paragraphs of the Complaint as if fully set forth herein.

42. By their unauthorized use of a mark that is identical to or substantially indistinguishable from the Marks, Defendants are trading on the Marks goodwill and reputation.

43. Defendants' unauthorized use of the Marks constitutes counterfeiting and infringement of federally registered trademarks and will likely confuse and deceive customers into erroneously believing that Defendants and their merchandise are associated with and/or authorized by Lifeguard Corp.

44. The acts and conduct of Defendants complained of herein constitute willful and deliberate counterfeiting and infringement of the Marks, in violation of Section 32 of the Lanham Act, 15 U.S.C. §§1114.

45. By reason of all the foregoing, Plaintiff is being damaged by Defendants' willful, unauthorized use of the Marks in the manner set forth above in an amount to be proven at trial.

46. Plaintiff seek statutory damages, attorneys fees and costs of this action pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

*(Trademark Counterfeiting Under Sections 32, 34, and 35, of the Lanham Act, 15 U.S.C. §§1114(l)(b), 1116(d), & 1117 (b)-(c))*

47. Plaintiff repeats and re-allege the prior allegations in Paragraphs as if fully set forth herein.

48. Without Plaintiff' authorization or consent, and having knowledge of Plaintiff' sole rights in The Trademarks, Defendants have distributed, advertised, offered, for sale and/or

sold counterfeit products to the consuming public in direct competition with Plaintiff, in or affecting interstate commerce.

49. Defendants' counterfeit products reproduce, counterfeit, copy, and colorably imitate the Marks, or display spurious designations that are identical with, or substantially indistinguishable from the Marks. Defendants have applied their reproductions, counterfeits, copies, and colorable imitations to labels and advertisements intended to be used in commerce upon or in connection with the sale, distribution, or advertising of Defendants' counterfeit products, which are likely to cause confusion, or to cause mistake, or to deceive.

50. Defendants' unauthorized use of The Trademarks was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff, and that this would deceived consumers into believing they were purchasing authorized merchandise bearing the true and legitimate Trademarks. Defendants' actions constitute willful counterfeiting of The Trademarks in violation of 15 U.S.C. §§1114(l)(b), 1116(d), & 1117 (b)-(c)).

51. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damage to The Trademarks, and other damages in an amount to be proved at trial.

52. Plaintiff therefore seeks statutory damages, plus attorneys' fees, plus punitive damages.

### THIRD CLAIM FOR RELIEF

*(Unfair Competition and False Designation of Origin Under 15 U.S.C. §1125(a))*

53. Plaintiff repeats and re-alleges the allegations in the prior Paragraphs of the Complaint as if fully set forth herein.

54. Plaintiff own all right, title and interest in and to the Lifeguard Marks and holds the exclusive rights to market and sell clothing bearing the Lifeguard Marks.

55. Defendants' conduct as alleged herein, including its use of the Marks on the Infringing Merchandise, constitutes a false designation of origin as such conduct is likely to cause confusion or to deceive consumers as to the origin, sponsorship, affiliation, connection and/or association of Lifeguard and/or its Lifeguard Marks, with Defendants.

56. The Infringing Merchandise is calculated and intended to deceive and is likely to deceive consumers into believing that they are Lifeguard's products. The Infringing Merchandise, which bears a virtually indistinguishable replica of the Lifeguard Marks, does not originate from or have the approval or authorization of Lifeguard.

57. Defendants are capitalizing on and profiting from the likely consumer confusion between their Infringing Merchandise and Lifeguard's authentic LIFEGUARD® brand merchandise.

58. The foregoing acts of Defendants constitute unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

59. Plaintiff has sustained and is entitled to monetary damages in an amount to be proved at trial.

60. Upon information and belief, Defendants have obtained gains, profits and advantages as a result of its wrongful acts in an amount not yet determined or ascertainable and said gains, profits and advantages rightfully belong to Plaintiff.

61. As such, Plaintiff is entitled to statutory and non-statutory damages to be decided at trial.

## **FOURTH CLAIM FOR RELIEF**

(Common Law Unfair Competition)

62. Plaintiff repeats and re-alleges the allegations in the prior Paragraphs of the Complaint as if fully set forth herein.

63. Plaintiff has expended substantial time, resources and effort to develop and obtain an excellent reputation and goodwill for their Marks.

64. Defendants have knowingly and willfully appropriated the Marks in an effort to create the false impression that the Infringing Merchandise are sanctioned by Plaintiff and in order to arrogate unto itself all of the goodwill associated with Plaintiff and its Marks. Defendants' unlawful acts in appropriating rights in Lifeguard Corp.'s registered trademarks

were intended to capitalize on the goodwill that accrued to the Marks, for Defendants' own pecuniary gain, at Plaintiff' expense.

65. The Infringing Merchandise being sold by Defendants are calculated to and are likely to create consumer confusion and to deceive and mislead consumers into believing that such merchandise originated with or is authorized by Plaintiff, and has caused and is likely to cause confusion as to the source of Defendants' Infringing Merchandise, all to the detriment of Plaintiff.

66. Defendants committed the acts alleged herein intentionally, deliberately, fraudulently, maliciously, willfully, wantonly and oppressively with the intent confuse the public and to injure Plaintiff.

67. Plaintiff has suffered monetary damages in an amount to be determined at trial.

68. Upon information and belief, Defendants have obtained gains, profits and advantages as a result of its wrongful acts in an amount not yet determined or ascertainable and said gains, profits and advantages rightfully belong to Plaintiff.

## FIFTH CLAIM FOR RELIEF
### (Unlawful Deceptive Acts and Practices- N.Y. Gen. Bus. Law §349)

69. Plaintiff repeats and re-alleges the allegations in the prior Paragraphs of the Complaint as if fully set forth herein.

70. Defendants, without Plaintiff' authorization or consent, and having knowledge of Plaintiff' prior rights in and to the Lifeguard Marks, manufactured, advertised, distributed, offered for sale and sold the Infringing Merchandise to the consuming public in direct competition with Plaintiff.

71. Defendants' use of the Marks is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of Defendants' Infringing Merchandise, and is likely to deceive the public into believing the Infringing Merchandise being sold by Defendants originates from, is associated with, or is otherwise authorized by Plaintiff.

72. Defendants' deceptive acts and practices involve public sales activities of a recurring nature.

73. Plaintiff is entitled to statutory damages in an amount to be determined at trial and attorneys' fees and costs of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1. Ordering that any websites and/or companies Defendants controls be permanently restrained and enjoined from:

    a. Further infringing the Marks, and from importing , manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any clothing bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the Marks or any design confusingly similar thereto;

    b. Using any simulation, reproduction, counterfeit, copy or colorable imitation of the Marks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any authorized products, including clothing, in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Lifeguard, or to any goods sold, manufactured, sponsored or approved by or connected with Lifeguard;

    c. Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products, including clothing, manufactured, distributed or sold by Defendants are in any manner associated or connected with Lifeguard, or are sold, manufactured, licensed, sponsored, approved or authorized by Lifeguard;

    d. Using any false descriptions or representations or any false designations of origin or from otherwise committing any acts of unfair competition with respect to

Lifeguard and/or the Marks, by using Lifeguard's registered marks without the authorization of Plaintiff;

e.     Engaging in any other activity constituting unfair competition with Lifeguard, or constituting an infringement of any of Lifeguard's marks, or of Lifeguard's rights in, or to use or to exploit, the Marks.

2. Directing that Defendants deliver for destruction all Infringing Merchandise, goods, products, signs, labels, brochures, advertising, promotional material prints, packages, dyes, wrappers, receptacles and advertisements in its possession or under its control bearing any of the Marks, or any simulation, reproduction, counterfeit, copy of colorable imitation thereof, and all plates, molds, screens, heat transfers and means of making the same.

3. Statutory Damages in an amount still to be determined but in the amount of at least $2,000,000.

4. Awarding Plaintiff its costs in this action together with reasonable attorneys' fees and expenses as provided for by 15 U.S.C. §1117.

5. Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

Dated: Brooklyn, New York
November 20, 2015

Lazar, Grunsfeld Elnadav, LLP


By: _____/GG/_____
Gerald Grunsfeld
Attorneys for Plaintiff
1795 Coney Island Avenue
Brooklyn, NY 11230
(718) 947-7476
Gerry@LGELaw.com